IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CR-00184-FL-5
No. 5:15-CR-00184-FL-6

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| | ) | |
| ELIZABETH PAIGE SYKES, | ) | |
| JOHN BOYNTON SIDBURY | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motions to suppress certain evidence allegedly obtained in violation of the Fourth and Fifth Amendments to the United States Constitution. (DE 128, 129, 133, 136, 138, 139, 140, 146). Also before the court are defendant Sidbury's motions to dismiss and defendant Sykes' motion to adopt the same. (DE 143, 144, 146). Pursuant to §636(b)(1), United States Magistrate Judge Robert B. Jones, Jr. entered a memorandum and recommendation ("M&R") on August 22, 2016, recommending that the court grant defendants' motions to suppress cell phone GPS tracking and bank records (DE 128, 129, 136, 146), and defendant Sidbury's motion to suppress vehicle GPS tracking (DE 133). The magistrate judge further recommends that the court deny defendant Sykes' motions to suppress un-mirandized statements and fruits of the electronic search (DE 138,139), defendant Sidbury's motion to suppress statements (DE 140), and defendants' motions to dismiss. (DE 143, 144, 146). Each party timely filed objections to the M&R. For the reasons that follow, the court adopts the recommendations of the magistrate judge in full.

## STATEMENT OF THE CASE

On August 19, 2015, a grand jury returned a second superseding indictment charging defendants Sykes and Sidbury with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956; and defendant Sidbury with one count of conspiracy to knowingly and intentionally distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841 and 846.[1]  On November 11, 2015, the magistrate judge entered an order extending the deadline to file pretrial motions to November 20, 2015.  The court further directed any responses to be filed by November 30, 2015.

On November 19 and 20, 2015, defendants filed the instant motions to suppress and motions to dismiss.  Defendants move to suppress all evidence obtained from the allegedly unlawful GPS tracking of their cell phones and defendant Sidbury's vehicles, bank records, statements made by defendant Sidbury while he was hospitalized, statements made by defendant Sykes during a search of her residence, and all evidence obtained from a search of defendant Sykes' electronic devices.

Defendants assert that the government violated their Fourth Amendment rights when it conducted warrantless precision location tracking on their cell phone devices.  Accordingly, defendants contend that all evidence subsequently obtained from the warrantless cell phone GPS tracking, including bank records, be suppressed as fruit of the poisonous tree.  Defendant Sidbury argues that he was also the subject of unconstitutional vehicle GPS tracking and contends that all

_____

[1] The second superseding indictment also charges co-defendants, Mudiwa R.  Makoni ("Makoni"), Judson H.  Debnam ("Debnam"), Maurice D.  Kersey ("Kersey"), and Darryl B.  Pearsall, Jr.  ("Pearsall"), with one count of conspiracy to knowingly and intentionally distribute and possess with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 841 and 846; defendant Makoni  with one count of knowingly and intentionally distributing and possessing with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); and defendants Makoni and Debnam with one count conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956.  On September 26, 2016, defendant Debnam was sentenced to 48 months custody by Senior United States District Judge W.  Earl Britt.  Defendant Makoni is scheduled to be sentenced in this court on December 6, 2016.

evidence subsequently obtained from that tracking be suppressed as well. Additionally, defendant Sidbury argues that statements he made while hospitalized were involuntary and thus inadmissible under the Fifth Amendment.

Defendant Sykes contends that the government violated her Fifth Amendment rights when it executed a warrant to search her home and therefore all statements made during the search should be suppressed. Defendant Sykes also contends that all evidence obtained from an allegedly warrantless search of her electronic devices be suppressed. Furthermore, defendants assert that counts one and three should be dismissed for insufficiency of the indictment. The government timely responded to each of the instant motions.

The magistrate judge held an extensive evidentiary hearing on February 23, 24, and 25, 2016. At hearing, defendant Sidbury testified on his own behalf and called Lawrence Daniel as an expert witness. Defendant Sykes also testified on her own behalf. The government called three witnesses: (1) Detective Keith Heckman, (2) Sergeant Tony Pennica, and (3) Detective Bill Nordstrom. Each party offered several exhibits, which were admitted without objection. Following the hearing, the magistrate judge entered an order directing defendants to file a joint supplemental brief to clarify further certain issues raised by the parties in their briefings and at hearing. (DE 193).

The magistrate judge entered an M&R on August 22, 2016. Therein, the magistrate judge recommends that the court grant some of defendants' motions and deny others. Each party timely filed separate objections to the M&R.

Defendants' arraignment was continued in this case to no later than 30 days after disposition of the instant motions.

**STATEMENT OF FACTS**

The facts preceding defendants' indictment may be summarized as follows.[2]  Sometime in or around late 2014, Detective Heckman began investigating defendant Sidbury as a possible drug trafficker.  (Hr'g Tr. Vol. I, DE 194).  At the time the investigation was launched, the Raleigh Police Department had received three anonymous letters which alleged that defendant Sidbury was involved in a drug trafficking scheme.  (Id. at 67:24–25; 68:1–21). The letters stated that defendant Sidbury would travel to California to purchase drugs and then ship the drugs to North Carolina for distribution.  (Id.).  The letters also contained information about defendant Sidbury's nicknames, his vehicles, his phone numbers, and addresses for stash houses used to store drugs.  (Id.).  Additionally, sometime before the investigation was launched, an anonymous tipster called the police department and provided details to Agent John Butler regarding defendant Sidbury's possible drug trafficking activity.  (Id.  at 128:8–22).

After the tips were received, Detective Heckman began surveillance on defendant Sidbury to confirm details provided in the anonymous letters.  (Id. at 69:9–15).  Once officers corroborated information provided in the letters, Detective Heckman requested a pen order from a North Carolina Superior Court judge for one of defendant Sidbury's phone numbers.  (Id.  at 69:20–21).  Detective Heckman hoped that the order would allow him to "further corroborate . . . information . . . to confirm that [defendant Sidbury] was actually traveling . . . to banks, [and] that he was utilizing the addresses and the stash houses that the letter[s] indicated that he was."  (Id.  at 70:10–13).  The pen order allowed officers to obtain GPS location information about defendant's cell phone and track its whereabouts at 15 minute intervals.  (Id.  at 75:11–14).  The pen order also allowed officers to

---

[2]Although the court finds no error in the factual findings in the M&R, the court summarizes the facts independently here upon review of the record as it pertains to the instant motions.

obtain GPS location information about any phone which contacted defendant's cell phone, although officers never requested such information from the phone company. (Id. at 83).

The GPS location information collected pursuant to the pen order assisted officers "in conducting their physical surveillance" of defendant Sidbury. (DE 157 at 2). Based largely on information obtained from these surveillance efforts, officers obtained additional pen orders for defendant Sidbury's cell phone as well as pen orders to obtain GPS location information of defendant Sidbury's vehicles. (Id.). The information obtained from surveillance conducted pursuant to these pen orders allowed police to gather additional information about defendant Sidbury's alleged drug trafficking activity, including banking information. (DE 203 at 42–49). Detective Heckman estimated that officers obtained more than 20 pen orders from December 2014 to April 2015. (Hr'g Tr. Vol. I, DE 194, 72:1–8).

Sometime during the investigation, officers identified defendant Sykes as one of defendant Sidbury's possible associates. (Id. at 127:19–22). Detective Heckman admitted that defendant Sykes' name and/or address was not referenced in any of the anonymous letters. (Id. at 126:17–25; 127:15–17). Rather, Detective Heckman testified that defendant Sykes was developed as a suspect based on officers' surveillance of defendant Sidbury. (Id. at 127:18–22). The anonymous caller also provided defendant Sykes' address as a possible address for defendant Sidbury. (DE 248-1 at 6).

Based on information obtained from their investigation, officers believed defendant Sykes was laundering money for defendant Sidbury. (Hr'g Tr. Vol. II, DE 210, 242:10–12). On June 9, 2015, officers obtained a search warrant for defendant Sykes' residence. (Id. at 242:2–4). Officers sought documents, computer equipment and other items related to defendant Sidbury's money laundering scheme. (Id. at 242:10–12). However, when officers attempted to execute the search

warrant, defendant Sykes was not home. (<u>Id.</u> at 242:2–4). Police then obtained a second search warrant and a pen order to track the location of defendant Sykes' cell phone. (DE 239 at 56). Officers executed the second search warrant on June 22, 2015. (<u>Id.</u>).

On June 22, 2015, officers approached defendant Sykes at her home after observing her leaving her house. (Hr'g Tr. Vol. II, DE 210, 242:24–25). The officers explained to defendant Sykes that they were investigating defendant Sidbury for possible drug trafficking and money laundering activity. (<u>Id.</u> at 242:25, 243:1). The officers also explained to defendant Sykes that they had a warrant to search her home for documents and other items, such as computers, related to their investigation. (<u>Id.</u>). The officers told defendant Sykes that she was not under arrest. (<u>Id.</u> at 284:12–16). While officers never explicitly told defendant Sykes she could leave, they also did not handcuff or otherwise restrain her. (<u>Id.</u> at 388:19). At this time, defendant Sykes expressed interest in calling someone. (<u>Id.</u> at 391:17–22).

Thereafter, officers followed defendant Sykes into her house and proceeded to look for documents and other items related to their investigation of defendant Sidbury. (<u>Id.</u> at 245:19–25; 246:19). Officers searched defendant Sykes' house for approximately four hours. (<u>Id.</u> at 354:6–7). During this time, defendant Sykes spoke with several different officers. (<u>Id.</u> at 354:17–18). "Pursuant to the search warrant, officers seized three cell phones, a desktop computer, a laptop computer used by [d]fendant Sykes for work, and an iPad mini, along with various documents." (DE 239 at 61). Detective Heckman explained to defendant Sykes that she would get her devices back after officers obtained an additional search warrant to access their contents. (Hr'g Tr. Vol. II, DE 210, 318:1–4). Detective Heckman also explained to defendant Sykes "that she would possibly receive her electronic devices back faster if she consented to a search." (DE 239 at 61). Defendant

Sykes felt inclined to consent but wanted to speak with an attorney first and asked Detective Heckman if he knew of any attorneys who practiced in federal court. (Hr'g Tr. Vol. II, DE 210, 318:15–25). At defendant Sykes' request, Detective Heckman contacted Bert Nunley ("Nunley"), an attorney who was "not [a] friend[] of his," but whose contact information he had "from meeting [him] during past cases which he was involved." (DE 239 at 62).

After Detective Heckman called Nunley, he spoke briefly with him before passing the phone to defendant Sykes. (Id.). Defendant Sykes spoke with Nunley in the kitchen for a few minutes before returning the phone to Detective Heckman. (Hr'g Tr. Vol. II, DE 210, 320:11–23). After Nunley spoke with defendant Sykes and Detective Heckman, he informed Detective Heckman that defendant Sykes would consent to a search of her electronic devices. (Id. at 10–18). After learning about her conversation with Nunley, Sergeant Pennica "advised [d]efendant Sykes that . . . officers cannot dispense legal advice or recommend lawyers," and encouraged her to contact another attorney. (DE 239 at 63).

After the officers finished searching her home, defendant Sykes followed them to the police station. (Hr'g Tr. Vol. II, DE 210, 394:10–11). While at the station, defendant Sykes signed a consent to search form. (Id. at 394:25). The consent form permitted officers to conduct forensic analysis on six of defendant Sykes' electronic devices. (DE 239 at 64). Furthermore, the consent form did not indicate any limitations on defendant Sykes' consent to search. (Id.). Officers returned one phone to her that evening, but kept her desktop computer and work computer. (Id.). Subsequently, defendant Sykes retained independent counsel. (Id.). After retaining independent counsel, defendant Sykes did not limit or revoke her consent. (Id.).

**DISCUSSION**

A.      Standard of Review

The district court reviews <u>de novo</u> those portions of a magistrate judge's M&R to which specific objections are filed.  28 U.S.C. § 636(b).  The court does not perform a <u>de novo</u> review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."  <u>Orpiano v. Johnson,</u> 687 F.2d 44, 47 (4th Cir. 1982).  Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R.  <u>Diamond v. Colonial Life & Accident Ins. Co.,</u> 416 F.3d 310, 315 (4th Cir. 2005); <u>Camby v. Davis,</u> 718 F.2d 198, 200 (4th Cir. 1983).  Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636 (b)(1).

B. Analysis

1. Motion to Suppress Fruit of Cell Phone GPS Tracking

The government presents several arguments challenging the magistrate judge's recommendation to grant defendants' motion to suppress evidence obtained from GPS tracking of defendants' cell phones. First, the government objects to the M&R's finding that the initial order, which authorized the collection of GPS location information, lacked probable cause and was insufficiently particularized.  Specifically, the government contends that in reaching his conclusion, the magistrate judge (1) undervalued the reliability of the anonymous tips, which provided the basis for the orders at issue, (2) improperly concluded that the affidavit failed to assert a temporal nexus with the underlying criminal activity, and (3) failed to account for the officers' actual understanding

of what the pen orders did and did not authorize.  Additionally, the government objects to the magistrate judge's finding  that the good faith exception and severability doctrine are unavailable in this case.  Finally, the government raises additional exceptions to the exclusionary rule.

          a. Probable Cause and Particularity

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend IV.  Ordinarily, a "search . . . is 'unreasonable' unless it has been authorized by a valid search warrant, and in cases in which the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness."  United States v. DeQuassie, 373 F.3d 509, 518 (4th Cir. 2004) (quoting Camera v. Muni. Ct. of San Francisco, 387 U.S. 523, 528–29 (1967)).  "Probable cause to search 'exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found' in a particular place."  United States v. Doyle, 650 F.3d 460, 475 (4th Cir.  2011) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)).

"The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated by the challenged search or seizure."  Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978) (internal citations omitted).  Courts "accord great deference" to a magistrate judge's initial determination of whether probable cause to search exists, asking only whether there

was a substantial basis for determining the existence of probable cause." United States v. Monteith, 662 F.3d 660, 664 (4th Cir. 2011).

With regard to officers' reliance on informants for determination of probable cause in a search warrant affidavit, courts apply a "totality-of-the-circumstances analysis . . . . which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip." Illinois v. Gates, 462 U.S. 213, 233 (1983). In performing this analysis, courts "recognize[] the value of corroboration of details of an informant's tip by independent police work." Id. at 241. In addition, where one informant's tip corroborates another informant's tip, the reliability of their information increases. See United States v. Fulgham, 143 F.3d 399, 401 (5th Cir. 2009); see also United States v. Muse, No. 98-4064, 1998 WL 726750, at *2 (4th Cir. Oct. 16, 1998) ("The information in the affidavit in this case was reliable . . . . [F]our informants told authorities about [the defendant's] criminal activities. . . . Thus, the informants corroborated each other's stories that [the defendant] was engaging in criminal activity at his residence.").

The government first contends that the M&R undervalued the reliability of the anonymous tips, which provided the basis for the initial pen order. Specifically, the government argues that because the police department received multiple tips, each which provided specific information about defendant Sidbury and his operations, the magistrate judge's reliance on United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996) is misplaced. The government also challenges the magistrate judge's finding that the officer's corroboration was "minimal at best." (DE 248 at 4).

In Wilhelm, the court found that an affidavit failed to establish probable cause where the affidavit was based on information provided by a minimally corroborated, anonymous phone call,

provided no indication of the tipster's reliability, and provided no basis for the officer's statement that the tipster was a mature and concerned citizen. 80 F.3d at 121. Certainly, differences do exist between <u>Wilhelm</u> and the present case. Namely, here, the pen order was based on four anonymous tips, as compared to one.

However, contrary to the government's assertions, the M&R properly assesses the reliability of the anonymous tipsters and properly values the officers' corroboration efforts. In reaching his conclusion, the magistrate judge considers a number of factors, including the number of tips received and the efforts officers took to corroborate information provided by the tipsters. However, the magistrate judge also considers the fact that the phone number provided by one of the tipsters was incorrect and the fact that the affidavit contained no information regarding the basis of the tipsters' knowledge. The M&R's extensive analysis appropriately considers many factors in concluding that "minimal corroboration of static, innocent details combined with the lack of any information about the anonymous tipster[s'] basis of knowledge and reliability is insufficient to support a finding that there was a substantial basis to determine that probable cause existed." (DE 239 at 34).

The government also challenges the M&R's conclusion that the affidavit, which supported the pen order authorizing GPS tracking of defendants' cell phones, failed to establish a temporal nexus with defendants' underlying criminal activity. In lodging this objection, the government reiterates arguments advanced in its prior briefings. Where the M&R's analysis on this point is thorough and correct, the court adopts as its own the magistrate judge's finding that the affidavit failed to establish a temporal nexus with the underlying criminal activity. See <u>United States v. McCall,</u> 740 F.2d 1331, 1335 (4th Cir. 1984) ("A valid search warrant may issue only upon

allegations of facts so closely related to the time of the issue of the warrant as to justify a finding or probable cause at that time.") (internal quotations omitted); see also Doyle, 650 F.3d at 474 (finding that "it was unreasonable to believe that probable cause" existed where the affidavit supporting probable cause gave no indication as to when the underlying criminal activity took place).

Lastly, the government contends that the M&R erred in concluding that the pen order failed to identify with particularity the places to be searched or items to be seized. Specifically, the government argues that the M&R failed to "properly account for the officers' actual knowledge and understanding of what the order could and could not authorize, and their full compliance with that authorization under the Fourth Amendment." (DE 248 at 10).

However, self-imposed restraints cannot retroactively validate otherwise unlawful searches. See Groh v. Ramierz, 540 U.S. 551, 561 (2004); see also Katz v. United States, 398 U.S. 347, 356 (1967). Furthermore , the Fourth Amendment requires that warrants leave nothing to the discretion of the warrant's executing officer. See Andersen v. Maryland, 427 U.S. 463 (1976) (noting that the particularity requirement of the Fourth Amendment requires that warrants leave nothing "to the discretion of the officer executing the warrant") (internal quotations omitted); see also United States v. Williams, 592 F.3d 511, 519 (4th Cir. 2010). Under this precedent, the fact that the officers may have engaged in self-restraint or been restrained from obtaining certain GPS data from private cell phone companies does not impact whether or not the orders at issue were sufficiently particularized under the Fourth Amendment. Because the first pen order allowed officers to retrieve GPS location information about any phone which contacted the target phones, and nothing in the affidavit shows the relation between those contacting phones and the underlying criminal activity, the magistrate judge  is correct in concluding that the pen orders lack the requisite particularity under the Fourth

Amendment. See United States v. Hurwitz, 459 F.3d 473 (4th Cir. 2006) ("The Fourth Amendment requires that a warrant be no broader than the probable cause on which it is based.") (internal quotations omitted).

Accordingly, where the M&R's analysis is through and correct, the court adopts as its own the M&R's conclusion that "there is no substantial basis to determine that probable cause exists to support the first pen order, and it is also invalid for lack of particularity." (DE 239 at 36).

### b. Good Faith Exception

The government next objects to the M&R's finding that the good faith exception is inapplicable in this case. Even if the pen order is invalid for lack of probable cause or sufficient particularity, the government argues that the good faith exception prevents suppression of the evidence.

The good faith exception is a well-established exception to the warrant requirement. United States v. Leon, 468 U.S. 897, 919–22 (1984). Under the exception, suppression of evidence obtained from a subsequently invalidated search warrant is appropriate only when "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922 n.23. Generally, evidence will only be suppressed if "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in th existence of probable cause." Id. at 926.

However, there are four circumstances where the good faith exception will not apply. Specifically, the good faith exception is inapplicable when:

> (1) "the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth";

(2) the magistrate acted as a rubber stamp for the officers and so "wholly abandoned" his detached and neutral "judicial role";

(3) "an affidavit [is] so lacking in probable cause as to render official belief in its existence entirely unreasonable"; or

(4) "a warrant [is] so facially deficient– i.e., in failing to particularize the place to be searched or the things to be seized– that the executing officers cannot reasonably presume it to be valid."

United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (quoting Leon, 468 U.S. at 923)

In its objection, the government contends that the magistrate judge erred in failing to consider the number of times officers previously relied on similar orders. While past reliance on similar orders does tend to support application of the good faith exception, it is not determinative.

For the reasons given in the thoughtful and thorough M&R, the good faith exception is inapplicable in this case. Assuming *arguendo* that the good faith exception can apply to warrant equivalents, the M&R concludes that it is not appropriate in this case. As the M&R notes, the affidavit contained vague, minimally corroborated allegations of anonymous tipsters and the affiant mischaracterized the tipsters as confidential informants.[3] Additionally, the "totality of the information provided to the magistrate included no indication as to when the events supposedly creating probable cause to search took place." Doyle, 650 F.3d at 475 (internal citations omitted). For these reasons, the M&R correctly concludes that the affidavit was so lacking in probable cause that the officers could not reasonably rely on the pen order.

---

[3]There is no evidence to suggest this mischaracterization was deliberate, but the magistrate judge notes that "this puffing suggests that Detective Heckman knew the reliance on the resulting order was not reasonable." (DE 239 at 39). "[T]he [g]overnment concurs with the [M&R's] finding that there is no evidence that the officer's error in initially referring to the anonymous tipster as a 'source' or 'informant' was done in bad faith." (DE 248 at 14). However, the government "disputes the suggestion that the error had any impact on bolstering probable cause." (Id.).

Further, because the pen order permitted the collection of GPS tracking data about any phone which contacted the target phones, the pen order was also so "facially deficient" that the officers could not "reasonably presume it to be valid." Bynum, 293 F.3d at 195. Where the M&R's analysis on this point is through and correct, it will not be disturbed.

c. Severability

The government also objects to the M&R's conclusion that severability is inapplicable in the present case. Specifically, the government challenges the M&R's findings that there are no categories of divisible information and that "even if the order did contain divisible portions . . . the valid portions [do not] make up the greater part of the warrant such that severability can be applied." (DE 239 at 45). In lodging these objections, the government reiterates arguments advanced in its prior briefings. Where the M&R's analysis on this point is thorough and correct, the court adopts as its own the magistrate judge's finding that severability is inapplicable in this case.

d. Exceptions

In its objection to the M&R, the government raises the issue of whether certain exceptions to the exclusionary rule are applicable in this case. Without going into significant detail, the government forecasts some facts to support the potential applicability of the independent source doctrine, the inevitable discovery doctrine, and the attenuation doctrine. While raised in its prior briefings, the government did not previously address the grounds for applying these doctrines under the circumstances in this case. Accordingly, because the government did not present any factual support for this argument, the magistrate judge did not consider the issue.

Under the exclusionary rule, unlawfully obtained evidence is generally inadmissible. Murray v. United States, 487 U.S. 533, 537 (1988). However, there are several exceptions to this rule. Three

exceptions are the independent source doctrine, the inevitable discovery doctrine, and the attenuation doctrine. First, the independent source doctrine permits courts to admit unlawfully obtained evidence if the evidence was also "discovered by means wholly independent of any constitutional violation." Nix v. Williams, 467 U.S. 431, 443 (1984). Relatedly, the inevitable discovery doctrine permits courts to admit unlawfully obtained evidence if the evidence " 'ultimately or inevitably would have been discovered by lawful means.' " Id. at 444. The government must prove by a preponderance of evidence that the unlawfully obtained evidence was or would be discovered through independent lawful means. Id. Lastly, under the attenuation doctrine, evidence unlawfully obtained may be admissible if the causal connection between the unlawful conduct and the seizure of evidence is sufficiently "attenuated as to dissipate the taint" of the unlawful conduct. Nardone v. United States, 308 U.S. 338, 341 (1939). The government bears the burden of establishing admissibility under the attenuation doctrine. United States v. Seidman, 156 F.3d 542, 548 (4th Cir. 1998) (internal quotations omitted). In determining whether the attenuation doctrine is applicable, courts consider the "temporal proximity" of the unlawful conduct and the seizure of evidence, "the presence of intervening circumstances", and "the purpose and flagrancy of the official misconduct." Brown v. Illinois, 422 U.S. 590, 603–604 (1975).

Here, the government offers little factual support for the applicability of the independent source, inevitable discovery, and attenuation doctrines. In lodging its objection, the government seeks to "reserve[] its arguments on these points," pending resolution of the instant motions. (DE 248 at 23). In reserving its arguments, the government briefly forecasts facts to support application of the aforementioned exceptions under the present circumstances. While the court acknowledges the government's arguments, absent additional facts supporting application of these exceptions to

the exclusionary rule, the government has not met its burden to show that the inevitable discovery, independent source, and attenuation doctrines do apply in this case.[4] Where the M&R's analysis on this point is otherwise thorough and correct, the court adopts as its own the magistrate judge's findings regarding defendants' motion to suppress. Accordingly, the court overrules the government's objection without prejudice.

2. Motion to Suppress Fruit of Vehicle GPS Tracking

For the same reasons it objects to the M&R's conclusions regarding defendants' motion to suppress cell phone GPS tracking evidence, the government also objects to the M&R's analysis regarding defendant Sidbury's motion to suppress vehicle GPS tracking evidence, which was obtained through pen orders following the initial cell phone GPS pen order. For the same reasons explained above, the court adopts as its own the magistrate judge's findings related to this motion to suppress. To the extent the government's objection regarding the applicability of certain exceptions to the exclusionary rule applies to evidence obtained from vehicle GPS tracking, the court overrules the government's objection without prejudice. For the same reasons mentioned above, without further detail explaining the applicability of an exception to the exclusionary rule, the government fails to meet its burden to permit the admission of this evidence.

---

[4] For example, the government contends that the kidnaping of defendant Sidbury and the subsequent interview of defendant Debnam are independent and lawful sources of the evidence. (DE 248). Specifically, the government argues that a warrant for defendant Debnam's text messages, obtained pursuant to the investigation of defendant Sidbury's kidnaping, provided a wealth of information, including co-conspirators, bank accounts, and stash house locations and drug drops. (DE 248 at 24). To support this proposition, the government included as an exhibit to its objection sample texts between defendants Sidbury and Debnam. (DE 248-1). However, these text messages, or documents purporting to reflect text message communications, contain very minimal information about the bank record evidence that is at issue in this case. (DE 248-1 at 9–10). Because these facts do not prove that the evidence was or would have been discovered through independent lawful means, the government has not met its burden in showing the applicability of the aforementioned exceptions.

3.  Motion to Suppress Bank Records

Lastly, the government objects to the magistrate judge's recommendation to grant defendants' motion to suppress bank records.[5]   Specifically, the government objects to the conclusion that suppression of phone and vehicle tracking evidence necessarily leads to the suppression of any other evidence in this case, including defendants' bank records.  The government contends that even if the evidence were the fruit of an unlawful search, the bank records would remain admissible on other grounds.

In its objection, the government forecasts some facts to support the admissibility of bank record evidence under the inevitable discovery doctrine, the independent source doctrine, and the attenuation doctrine .  In its prior briefings, however, the government did not previously address the bases for applying these doctrines to the bank record evidence.   Accordingly, because the government did not present any factual support for this argument, the magistrate judge did not consider the issue.  Absent additional facts to support application of an exception to the exclusionary rule to the bank record evidence, the court overrules the government's objection without prejudice.

4.  Defendant Sykes' Motion to Suppress Un-Mirandinzed Statements

Defendant Sykes objects to the M&R's analysis regarding her motion to suppress statements made to officers during the execution of a warrant to search her home.  In particular, defendant Sykes challenges the magistrate judge's determination that the totality of the circumstances "fails

---

[5]The magistrate judge recommends granting defendants' motion to suppress bank records on the basis that such bank records are fruit of the unlawful phone and vehicle GPS tracking.  However, the magistrate judge provides that if this court does not find the bank records to be the unlawful fruit, then he recommends denying the motion.  Since this court adopts the magistrate's conclusion that bank record evidence is the fruit of the unlawful cell phone and vehicle GPS tracking, the court does not address the magistrate's alternative recommendation.

to support a finding that a reasonable person" would not have felt free to terminate the interrogation and leave.  (DE 239 at 74).

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  In order to protect that right, when a suspect is subject to "custodial interrogation," he must be warned that "he has a right to remain silent, and that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  Miranda v. Arizona, 384 U.S. 436, 444 (1966).

To determine whether an individual is in custody, the court considers whether, under the totality of circumstances, the suspect's freedom of action "is curtailed to a degree associated with formal arrest."  Berkemer v. McCarty, 468 U.S. 420, 440 (1984).  The key question is "how a reasonable man in the suspect's position would have understood his situation."  Id.  at 422.

Relevant factors in determining whether an individual is in custody include the duration and location of the questioning, "statements made during the interview, . . . the presence or absence of physical restraints during the questioning, . . . and the release of the interviewee at the end of the questioning."  Howes v. Fields, 132 S.Ct. 1181, 1189 (2012) (internal citations omitted).  Informing a suspect that he is not under arrest may support a finding that an individual was not in custody, but it is not dispositive.  Compare United States v. Hargrove, 625 F.3d 170, 178–182 (4th Cir. 2010) (concluding that the suspect was not "in custody" when he was told that he was not under arrest and free to leave, interviewed at home, not placed in handcuffs, given freedom of movement, and conversation was conducted in an "amicable" tone), with United States v.  Colonna, 511 F.3d 431, 435 (4th Cir.  2007) (concluding that despite being instructed he was not under arrest, suspect was

"in custody" when he was awakened at gun point at home, guarded at all times, interviewed for three hours and never told he was free to leave or did not have to respond to questions).

The magistrate judge properly concludes that defendant Sykes' was not subject to custodial interrogation. In reaching this conclusion, the magistrate judge considered a number of facts. Specifically, the magistrate judge considers that officers told defendant that she was not under arrest, officers did not place defendant in handcuffs, defendant was questioned at her house, and defendant was free to use the restroom. The magistrate judge also considers the length of the interrogation, the number of officers present in defendant Sykes' home, and the tone and language officers used when speaking to defendant Sykes. Based on the totality of the circumstances, the magistrate judge concluded that defendant Sykes was not subject to custodial interrogation.

Defendant Sykes contends that the totality of the circumstances fail to support the magistrate judge's conclusion. In raising this objection, defendant Sykes reiterates arguments made in her prior briefings, which were considered by the magistrate judge. Where the M&R's analysis on this point is through and correct, the court adopts as its own the magistrate judge's conclusion that the totality of the circumstances support a finding that a reasonable person would have felt at liberty to terminate the interrogation and leave.

Defendant Sykes also objects to the M&R's analysis regarding her request to speak with an attorney. Defendant Sykes argues that the magistrate judge improperly relied on Sixth Amendment case law in determining whether she was in custody under the Fifth Amendment. Defendant Sykes' statements regarding her desire to speak to someone may support finding that she was subject to custodial interrogation. However, in raising this objection, defendant Sykes overvalues the weight this factor has under the totality of circumstances approach. The magistrate judge considered

defendant Sykes' request to speak to someone, among many other factors, in determining whether or not she was subject to custodial interrogation. Absent the Sixth Amendment analysis, the totality of the circumstances would still support a finding that defendant Sykes was not subject to custodial interrogation.

Defendant Sykes further contends that the M&R failed to resolve several factual disputes, the resolution of which would impact the determination of whether she was subject to custodial interrogation. For example, defendant Sykes argues that the magistrate judge failed to appropriately consider evidence that Dan Jones, DEA Task Force Agent, authored a report stating that defendant was "detained" prior to officers executing the warrant to search her residence. As another example, defendant Sykes asserts that the magistrate judge failed to resolve the question of whether officers yelled at her or threatened her during the interrogation in her home.

Contrary to defendant Sykes' suggestion, the magistrate judge did resolve some of the factual disputes defendant contends remain unresolved. In particular, the M&R notes that "the report of Officer Jones stat[ing] that [d]efendant Sykes was detained outside of her townhome" and the fact that Lieutenant Quick "sp[oke] in a raised voice," both "support a finding of custodial interrogation." (DE 239 at 72). The magistrate judge specifically considered both of these facts, which for the purpose of analysis he resolved in defendant Sykes' favor, in reaching his ultimate conclusion that defendant Sykes was not subject to custodial interrogation. To the extent other factual disputes remain unresolved, resolution of those disputes does not disturb the magistrate judge's findings under a totality of the circumstances approach.

Lastly, defendant Sykes contends that even if she was not subject to custodial interrogation, statements she made during the execution of warrant to search her house should be suppressed as

fruit of the unlawful cell phone GPS tracking. This argument was not considered by the magistrate judge.

In part, the exclusionary rule prohibits information "acquired as an indirect result of [an] unlawful search," from being introduced into evidence. Murray v. United States, 487 U.S. 533, 537 (1988) (internal citations omitted). Evidence obtained pursuant to a search warrant is subject to the exclusionary rule if unlawfully obtained information was "critical to establishing probable cause for the issuance of the warrant." United States v. Karo, 468 U.S. 705, 719 (1984). "However, if sufficient untainted evidence was presented in the warrant affidavit to establish probable cause, the warrant [is] nevertheless valid." Id. (citing Franks v. Delaware, 438 U.S. 154, 172 (1978)). Where unlawfully obtained information is presented to and affects the magistrate judge's decision to issue a warrant, the court must "examine[] the search warrant affidavit absent the illegally-obtained information to determine whether the untainted portion of the affidavit set forth probable cause." United States v. Walton, 56 F.3d 551, 554 (4th Cir. 1995) (internal citations omitted).

While the affidavit supporting the warrant to search defendant Sykes' home does contain a significant amount of information obtained from surveillance conducted pursuant to unlawful GPS tracking, officers did not need a search warrant to speak with defendant Sykes. As determined by the magistrate judge, so long as defendant Sykes was not in custody, the officers were free to question her. While the search warrant may have enhanced the officers' authority and encouraged defendant Sykes to respond to their questions, ultimately the statements made by defendant Sykes during her interrogation were voluntary and otherwise lawfully obtained. Accordingly, even if unlawfully obtained information infected the validity of the search warrant and subsequent search of defendant Sykes' home, the statements defendant Sykes' made to officers during the execution

of that search warrant are not the tainted fruit of the poisonous tree.  Therefore,  the court overrules

defendant Sykes' objection and adopts the magistrate judge's findings regarding defendant Sykes'

motion to suppress un-mirandized statements.

     5.  Defendant Sykes Motion to Suppress Fruits of Search of Electronic Devices

     Defendant Sykes objects to the magistrate judge's finding that she gave knowing and

voluntary consent for officers to search her electronic devices.[6]  In lodging this objection, defendant

Sykes primarily reiterates arguments made in her prior briefings.  However, she does argue

specifically that the magistrate judge erred by "plac[ing] undue weight on the finding that once

[defendant] Sykes obtained independent counsel, she still provided a charger and password to one

of her electronic devices."  (DE 246 at 4).

     Contrary to defendant Sykes' suggestion, the court did not place undue weight on her

subsequent actions.  In determining whether defendant Sykes' consent was voluntarily given, the

magistrate judge considered a number of factors.  Those factors include the location where defendant

Sykes gave consent, defendant's age, maturity, and education, and the lack of any false or

misleading statements suggesting defendant could not refuse consent. While certain other factors

weigh against a finding of voluntary consent, the magistrate judge addressed those factors,

ultimately deciding that defendant Sykes' consent was voluntary.  Where the M&R's analysis on

---

[6]Defendant Sykes also objects to the magistrate judge's decision not to reach her argument that the search warrant used to seize her electronic devices was a general warrant, which violated the Fourth Amendment.  However, as the M&R notes, because the search of defendant Sykes' devices was not conducted pursuant to that warrant, but rather defendant's consent, it need not matter if the warrant to search her residence authorized the search of her electronic devices.  Even if the search warrant permitting the seizure of defendant's electronic devices was unlawful, defendant's subsequent consent was a sufficient "act of free will . . . [which] purge[d] the primary taint [of the unlawful seizure]."  Wong Sun v. United States, 371 U.S. 471, 486 (1963).

this issue is thorough and correct, the court adopts as its own the magistrate judge's conclusion that defendant Sykes gave voluntary consent to search her electronic devices.

6. Defendant Sidbury's Motion to Suppress Statements

The M&R recommends that the court deny defendant Sidbury's motion to suppress statements made to police officers while he was hospitalized. Defendant Sidbury does not specifically challenge the M&R on this point. Having reviewed the M&R's analysis on this motion, and finding no clear error, see Diamond, 416 F.2d at 315; Camby, 718 F.2d at 200, the court adopts as its own the magistrate judge's recommendation that defendant Sidbury's motion to suppress statements be denied.

7. Motions to Dismiss

The M&R recommends denying defendants' motions to dismiss. Defendants do not specifically challenge the M&R's analysis regarding these motions. Having reviewed the M&R's analysis on this motion, and finding no clear error, see Diamond, 416 F.2d at 315; Camby, 718 F.2d at 200, the court adopts as its own the magistrate judge's recommendation that defendants' motions to dismiss be denied.

**CONCLUSION**

Upon de novo review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court overrules defendants' objections and ADOPTS the findings of the magistrate judge in full. Accordingly, the court DENIES defendant Sykes' motion to suppress un-mirandized statements (DE 138), defendant Sykes' motion to suppress fruits of the electronic search (DE 139), defendant Sidbury's motion to suppress statements (DE 140), defendant Sidbury's

motions to dismiss counts one and count three of the indictment (DE 143, 144), and defendant Sykes' motion to adopt the same (DE 146). In addition, the court overrules the government's objections without prejudice and GRANTS defendants' motions to suppress cell phone GPS tracking and bank records (DE 128, 129, 136, 146), and defendant Sidbury's motion to suppress vehicle GPS tracking. (DE 133). In accordance with the court's order entered May 31, 2016, the clerk will now set the matter for arraignment at the court's next regular criminal term no sooner than 30 days from date of entry of this order.

SO ORDERED, this the 22nd day of November, 2016.

LOUISE W. FLANAGAN
United States District Judge